IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 12-46715-399 |
| | ) | |
| Felicia McIntosh, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

This matter comes before this Court on debtor Felicia McIntosh's (the "Debtor") objection to confirmation of her Second Amended Chapter 13 Plan (the "Final Plan") and the objection to confirmation of the Final Plan by John V. LaBarge, Jr., Chapter 13 trustee (the "Trustee"). The Debtor's and the Trustee's objections to confirmation of the Debtors' Final Plan are overruled. The Final Plan shall be confirmed by separate order.

## BACKGROUND

On July 12, 2012, the Debtor filed a petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). On the same day, the Debtor filed her Chapter 13 Plan. The Debtor filed her plan using the mandatory model plan form required in this district, but the Debtor added certain language to Paragraph 10, the "other" section of the model plan.[1] On August 14, 2012, the Trustee filed an objection to confirmation of the Debtor's Chapter 13 plan, asking this Court to deny confirmation of the Debtor's plan based on the language that she added to Paragraph 10, and on another ground. On August 28, 2012, the Debtor filed her First Amended Chapter 13 Plan. In her First Amended Plan, the Debtor removed some language from Paragraph 10, but much of it remained. The Trustee again objected to confirmation of the Debtor's First Amended Plan, including an objection to the language added by the Debtor to Paragraph 10. Vantage Credit Union also objected to confirmation of the Debtor's First Amended Plan based on language added by the Debtor to Paragraph 10. Paragraph 10 of the First Amended Plan reads:

> Other: Any plan provision included in plan paragraph 10 which conflicts in

---

[1] A revised version of this Court's model Chapter 13 plan went into effect November 1, 2012. The Debtor's versions of its plan, including the Final Plan, were drafted using the form of model plan in effect prior to November 2012. The November 2012 revisions to the model Chapter 13 plan are not relevant to this case.

1

any way with any other provision in the plan shall expand, overrule, or supersede the form plan provision. As used herein, the term "Debtor" shall include both debtors in a joint case.

(A) The Debtor hereby rejects any and all contracts with any creditors, including, but not limited to, any arbitration clauses contained therein, other than, if any, contracts or leases secured solely by real property or any creditors whose contract or lease is specifically assumed in the plan.

(B) Allowed claims against the Debtor shall be paid in accordance with the provisions of the Bankruptcy Code and this Plan.

> 1. Creditors with secured claims shall retain their mortgage, lien or security interest in collateral until the earlier of (a) the payment in full of the secured portion of the proof of claim, or (b) discharge under 11 U.S.C. § 1328.
>
> 2. Creditors who have co-signers, co-makers, or guarantors ("Co-Obligors") from whom they are enjoined from collection under 11 U.S.C. § 1301, shall file their claims, including all of the contractual interest which is due or will become due during the consummation of the Plan, and payment of the amount specified in the proof of claim to the creditor shall constitute full payment of the debt as to the Debtor and any Co-Obligor.

(C) Pursuant to 11 U.S.C. § 1322(b)(9), property of the Estate shall not revest in the debtor upon confirmation, but it shall revest in the debtor upon discharge, dismissal or other Order of the Court. During the pendency of the plan confirmed herein, all property of the estate, as defined in §1306(a) of Title 11 of the United States Code, shall remain under the exclusive jurisdiction of the Court.

At a September 19, 2012 hearing on the Debtor's First Amended Plan, this Court orally sustained the Trustee's objection to confirmation based on the language the Debtor added to Paragraph 10, and continued the confirmation hearing to October 17, 2012.

On September 25, 2012, the Debtor filed her Final Plan. In the Final Plan, the Debtor removed the language she had added to Paragraph 10. The Debtor objected to confirmation of her own Final Plan on the ground that language she wanted to add to Paragraph 10 was not included in the Final Plan and that this Court's disallowance of the language requested by the Debtor violated her substantive rights under the Bankruptcy Code. In her objection, the Debtor set forth the language that she believed this Court did

2

not allow her to include in her Chapter 13 plan. The Paragraph 10 language that the Debtor identifies in her objection adds to the language from Paragraph 10 of her First Amended Plan, the word "executory" before the words "contract" or "contracts" each time they appear in subsection (A) of paragraph 10. The Trustee objected to confirmation of the Debtor's Final Plan on the ground that "[t]he set monthly payments to be made by the Trustee exceed the plan payment," which objection is overruled. The Debtor's Final Plan came before this Court for confirmation on October 17, 2012, at which time this Court stated that it would issue a written opinion.

## DISCUSSION

### A. Model Chapter 13 plans

This Court, like many bankruptcy courts, has a model Chapter 13 plan (the "Model Plan"). *See In re Visintainer*, 435 B.R. 727, 729-30 (Bankr. M.D. Fla. 2010) (as of 2010, approximately 70 percent of the bankruptcy courts used a model Chapter 13 plan). Local Rule 3015-3(A) of the United States Bankruptcy Court for the Eastern District of Missouri states, in pertinent part, that "the Court requires the use of the most current form Chapter . . . 13 plan. . . The form Chapter 13 plan is posted on the Court's web site and adopted as Local Form 13." Local Form 13 contains, at paragraph 10, an "other" section. In the "other" section of the Model Plan, a debtor may supplement the plan with provisions that affect his case, provided that those provisions meet the applicable requirements of the Bankruptcy Code and Rules.

This Court's requirement that Chapter 13 debtors use the Model Plan as required by Local Rule 3015-3(A) "is a valid exercise of the Court's authority to regulate local practice and procedure because such a policy does not affect the substantive rights of a chapter 13 debtor and is not inconsistent with the Bankruptcy Code or the Bankruptcy Rules." *Beskin v. Maupin (In re Maupin),* 384 B.R. 421, 426 (Bankr. W.D. Va. 2007)(citing *See In re Walat,* 89 B.R. 11 (E.D. Va. 1988)). To be upheld, a local rule must "(a) [be] consistent with the Bankruptcy Code in that it does not 'abridge, enlarge, or modify any substantive right,' as required by 28 U.S.C. §2075 and (b) [be] 'a matter of procedure not inconsistent with' the Bankruptcy Rules as required by Bankruptcy Rule 9029." *McGowan v. Ries (In re McGowan)*, 226 B.R. 13, 19 (B.A.P. 8th Cir. 1998) (quoting *Indus. Fin. Corp. v. Falk (In re Falk)*, 96 B.R. 901, 903 (Bankr. D. Minn. 1989) (en banc) (internal quotation marks omitted)).

Uniform plans promote efficiency in the review of plans by creditors, the court and

3

trustee, which is consistent with the purpose of the Bankruptcy Code. *See Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004) (formula approach for determining rate of interest on §1325(a)(5)(B) cramdown "entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings."); *In re Madera*, 445 B.R. 509, 515 (Bankr. D.S.C. 2011) (noting that several courts have adopted model plans because use of such plans comports with one of main goals of Bankruptcy Code; "efficient administration of bankruptcy cases"); *Maupin,* 384 B.R. at 426 ("Efficiency is a valid purpose of a uniform plan.") (quoted in *Madera*, 445 B.R. 515)).

Moreover, Bankruptcy Code §1327(a) provides that the debtor and creditors are bound by a confirmed plan. And this Court is required to make an independent determination that a Chapter 13 plan satisfies the requirements of the Bankruptcy Code. *United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1381 n.14 (2010) ("[§] 1325(a) . . . . *requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue."); *In re Russell,* 458 B.R. 731, 737 (Bankr. E.D. Va. 2010) ("[A] bankruptcy court has an independent duty to ensure that a chapter 13 plan meets the statutory requirements for confirmation.") (citing *Espinosa*, 130 S.Ct. at 1381 n.14)).

More than 5,000 Chapter 13 petitions are filed in this District each year. Often, creditors have small claims in several of these cases. It would not be cost-effective for such creditors, or efficient for this Court, to be required to search through each plan with a fine toothed comb to determine how parties' rights will be affected. As stated by the bankruptcy court in the Eastern District of Oklahoma, "a standard plan form is essential for this Court to meet its responsibility to review all Chapter13 plans that are filed in this District, to provide proper notice to interested parties, and to promote efficiency in the review of those plans by this Court and by interested parties." *In re Walters*, No. 11081466-TRC, 2012 WL 1536964, at *3 (Bankr. E.D. Okla. April 30, 2012).

**B.    The Debtor's Paragraph 10 language**

The Debtor states that she does not object to the Model Plan because the Model Plan allows (in Paragraph 10) the opportunity for debtors to make amendments to protect their substantive rights. Rather, the Debtor claims that the denial of her request to add language to Paragraph 10 infringes on her substantive rights. The Debtor admits that she bears the burden of proving a loss of her substantive rights. *See In re Walat,* 87 B.R. 408, 411 (Bankr. E.D. Va. 1988), *aff'd* 89 B.R. 11 (E.D. Va. 1988) (citing *In re Mgmt. Data*

4

*Servs., Inc.,* 43 B.R. 962, 966 (Bankr. W.D. Wash. 1984)).

The Debtor alleges a violation of various substantive rights, but she has failed to satisfactorily show any substantive right that is violated by the Final Plan.  And regardless of the Debtor's stated reason for objecting to confirmation of her Final Plan, it is clear that the Debtor seeks to impose her own boilerplate under the subterfuge that her substantive rights are being violated.  Therefore, the Debtor's objection to confirmation amounts to the Debtor's challenge of this Court's Model Plan.  *See Russell,* 458 B.R. at 735 (Provisions added by debtor to model plan "f[e]ll squarely within the category of additions that are emphatically not peculiar to this debtor and his financial circumstances but rather seek to substitute counsel's version of an appropriate uniform plan for the one adopted by the court.").

This Court rejects the Debtor's requested Paragraph 10 because it is boilerplate, contains irrelevant (and inapplicable) provisions and it directly conflicts with language used elsewhere in the plan and in the Bankruptcy Code; undertaking in turn the reasons for such rejection:

(1)  <u>The introductory section</u>.  This Court rejects the language in the Debtor's introductory section of Paragraph 10, stating that "[a]ny plan provision included in plan paragraph 10 which conflicts in any way with any other provision in the plan shall expand, overrule, or supersede the form plan provision.  As used herein, the term "Debtor" shall include both debtors in a joint case."  This language is mere boilerplate that signifies the Debtor's attempt to substitute, through her Paragraph 10 in its entirety, her own plan in the place of this Court's Model Plan.

(2)  <u>Paragraph 10(A)</u>.  The Trustee argues that the issue of assuming or rejecting *executory* contracts was nor properly before this Court because the Debtor included in her objection to confirmation of the Final Plan the term "executory" in  Paragraph 10(A), even though that word was not included in the First Amended Plan.  I disallow the Paragraph 10(A) language proposed by the Debtor regardless of whether it refers to *executory* contracts or contracts generally.

If Paragraph 10(A) refers to all contracts (rather than to executory contracts), this Paragraph cannot be allowed because the Bankruptcy Code provides no right to the Debtor to assume or reject a contract that is not executory.  *See* 11 U.S.C. §365(a) ("the trustee

5

. . . may assume or reject any *executory* contract or unexpired lease.")  (emphasis added); *Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.)*, 64 F.3d 141, 145 (4th Cir.1995) ("[b]ecause § 365 applies only to executory contracts, a debtor-in-possession does not have the option of rejecting or assuming non-executory contracts. . ."). And to the extent that language in a plan conflicts with the Bankruptcy Code, it is disallowed. *See Maupin,* 348 B.R. at 426 (quoting 11 U.S.C. §1322(b)(11)) ("[t]he plan may include 'any other appropriate provision not inconsistent with this title.' ").

If Paragraph 10(A) refers to executory contracts, it is inapplicable in this case because the Debtor scheduled no executory contracts or unexpired leases, and she checked the box on her schedules stating that she has no executory contracts or unexpired leases.  Additionally, the Debtor listed no executory contracts or unexpired leases in sections of her plan other than Paragraph 10.

The Debtor claims that her Paragraph 10(A) language providing for a blanket rejection of executory contracts (other than those "secured solely by real property" or those that are "specifically assumed in the plan" as stated by the Debtor in her Paragraph 10(A))[2] is necessary because she may be a party to "executory arbitration contracts she agreed to by adhesion" of which she is not aware.  According to the Debtor, she does not need to know or list "the identity of every party to an executory contract."  The Debtor submits that if she is not allowed to include her requested Paragraph 10(A), her substantive rights under Bankruptcy Code §1322(b)(7) will be violated.  This Court disagrees.

Section 1322(b)(7) permits a plan to "subject to section 365 of [the Bankruptcy Code], provide for assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor . . . ."  The Model Plan already provides the Debtor with the rights afforded in §1322(b)(7) to effectuate assumption or rejection by setting forth specific information, and it, therefore, does not abridge the Debtor's rights under §1322(b)(7). Nothing in §1327(b)(7) provides the Debtor with the right to effectuate a blanket rejection

---

[2] To the extent that Paragraph 10(A) is meant to prevent rejection of nonresidential real property leases under which the Debtor is a lessee without the Debtor's assumption of those leases, it conflicts with the Bankruptcy Code. 11 U.S.C. § 365(d)(4) (unexpired nonresidential real property leases under which the Debtor is lessee are deemed rejected if they are not assumed by earlier of plan confirmation or 120 days after order for relief).

6

of executory contracts (or unexpired leases)[3] without identifying which agreements are being rejected and after having stated on her schedules that she has no executory contracts or unexpired leases.

(3) Paragraph 10(B)(1). The Debtor's Paragraph 10(B)(1) is irrelevant as it pertains to bifurcated secured claims because the Debtor listed no bifurcated secured claims in her plan. To the extent that Paragraph 10(B)(1) is meant to address secured claims that are to be paid in full, this language conflicts with Bankruptcy Code §1325(a)(5). Section 1325(a)(5) sets forth ways in which a Chapter 13 Debtor can treat a secured claim in its plan: (1) if a creditor "has accepted the plan" the plan can treat the creditor in any way (§1325(a)(5)(A)); (2) the plan can provide for the creditor to receive the value of its collateral over the term of the plan and to "retain the lien securing such claim until the earlier of . . . the payment of the underlying debt determined under nonbankruptcy law; or . . . discharge under section 1328. . . ." (§1325(a)(5)(B)); or (3) the debtor may surrender the collateral to the creditor (§1325(a)(5)(C)).

According to the Debtor, she has two secured creditors and each would be afforded the requisite protection under the Bankruptcy Code. The Debtor submits that because one secured creditor did not object to the Debtor's First Amended Plan, it has accepted the plan under §1325(a)(5)(A). I will not presume that the secured creditor accepted the plan. The Debtor inserted a lengthy provision in Paragraph 10 (a provision directly conflicting with the treatment of such creditors' claims as provided in Paragraph 11 of the Model Plan), burying the language regarding treatment of secured creditors' claims together with provisions that were not relevant to the Debtor's case. I also reject the Debtor's argument that Vantage Credit Union, a secured creditor that *did* object to the First Amended Plan, is provided the protections afforded by the Bankruptcy Code. The Debtor contends that Vantage Credit Union would retain its lien until "the payment of the underlying debt determined under nonbankruptcy law pursuant to 11 U.S.C. §1325(a)(5)(B)(i)(I)(aa)" because, according to the Debtor, the "plan paid [the Debtor's] secured debt to Vantage Credit Union at a higher interest rate and over a shorter time period than her original loan agreement." However, the Debtor still has not demonstrated to this Court the amount of the "underlying debt

---

[3] The language in Paragraph 10(A) is unnecessary (and confusing at best) to the extent that the Bankruptcy Code already provides for the treatment of unexpired personal property leases. 11 U.S.C. § 365(p)(3) (In a Chapter 13 case, "if the debtor is the lessee with respect to personal property and the lease is not assumed in the plan confirmed by the court, the lease is deemed rejected . . . .").

7

determined under nonbankruptcy law" to Vantage Credit Union and that such debt will be paid prior to lien release. The Debtor's First Amended Plan failed to show that, when Vantage Credit Union's proof of claim is paid in full by the Trustee, Vantage Credit Union would not be entitled to payment for additional amounts (such as fees, costs and charges it could charge outside of bankruptcy) under non-bankruptcy law.

(4) <u>Paragraph 10(B)(2)</u>. The Debtor scheduled no co-debtors,[4] making Paragraph 10(B)(2) wholly irrelevant to her case and rendering any further analysis of Paragraph 10(B)(2) unnecessary.

(5) <u>Paragraph 10(C)</u>. The Debtor submits that she should be allowed to include in Paragraph 10(C) language regarding vesting of property of the estate. Paragraph 10(C) as proposed by the Debtor provides that property of the Debtor's estate will revest in the Debtor at the time of discharge, dismissal or other court order, rather than at confirmation.[5]

Bankruptcy Code § 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Section 1322(b)(9) permits the plan to "provide for the vesting of property of the estate on confirmation of the plan or at a later time, in the debtor. . . ."

The vesting language of the Debtor's proposed Paragraph 10(C) is not contrary to a specific provision of the Bankruptcy Code. However, the Model Plan already includes a provision (at Paragraph 13) regarding vesting, and the vesting language of the Debtor's Paragraph 10(C) is contrary to the language of the Model Plan. The Model Plan provides that title to property vests in the Debtor at confirmation.[6]

---

[4] The Debtor also listed no co-debtors in her plan.

[5] Paragraph 10(C) also states that "[d]uring the pendency of the plan confirmed herein, all property of the estate, as defined in §1306(a) of [the Bankruptcy Code], shall remain under the exclusive jurisdiction of the Court." *See* 28 U.S.C. §1334(e)(1) (court in which a bankruptcy case is pending has exclusive jurisdiction "of all the property. . . of the debtor as of the commencement of such case, and of property of the estate.") and *Security Bank of Marshalltown v. Nieman,* 1 F.3d 687, 690-91 (8th Cir. 1993) (Chapter 13 estate continues post-confirmation). This language added by the Debtor to Paragraph 10(C) is unnecessary.

[6] The Model Plan also states "Debtor is not to incur further credit or debt without the consent of the Court unless necessary for the protection of life, health or property and consent cannot be obtained readily."

8

The Debtor submits that she has the right to choose the time of vesting because §1322(b)(9) allows for vesting at a time later than confirmation and §1321 "requires the Debtor to be the author of the plan." Section 1321, stating simply that "[t]he debtor shall file a plan," provides that the Debtor is the only party who can propose a plan in a Chapter 13 case; it does not limit the requirement to use this Court's Model Plan without explanation. See *Visintainer*, 435 B.R. at 731 (§1321 did not limit ability of court to require use of model plan because §1321 meant that only debtor could propose a Chapter 13 plan). Likewise, §1322(b)(9) does not require vesting at a time later than confirmation in contradiction of this Court's Model Plan. Careful thought and consideration contributed to creation of the language in the Model Plan. Other than the Debtor's allegation that she has the right to choose the vesting period by virtue of §§1321 and 1322(b)(9), the Debtor provides no further explanation regarding why she wants property of the Debtor's estate to revest in the Debtor later than at confirmation, she alleges no other substantive right that was allegedly violated, and she has not demonstrated why the Model Plan language should be changed in this case. And this Court sees no reason to modify the vesting provision of the Model Plan.

The Debtor's requested language in Paragraph 10(C) appears to be nothing more than mere boilerplate language that is likely used in various courts, and an attempt by the Debtor to substitute her own version of a model plan for the Model Plan used in this District.

Overall, the Debtor has not convinced this Court that her substantive rights have been impacted by this Court's refusal to include in her plan language that she requests to add to Paragraph 10.

## CONCLUSION

The Debtor's and the Trustee's objections to confirmation of the Debtor's Second Amended Chapter 13 Plan are overruled. The Debtor's Second Amended Chapter 13 plan shall be confirmed by separate order.

DATED: November 30, 2012
St. Louis, Missouri

Barry S. Schermer
Chief United States Bankruptcy Judge

9

Copies to:

ALL CREDITORS AND PARTIES IN INTEREST AS SET FORTH ON THE MATRIX